KING, C.J.,
for the Court.
¶ 1. Johnny Tyrone Price was convicted in the Circuit Court of Noxubee County on two counts of aggravated assault, and was sentenced to consecutive terms of imprisonment of six years and twelve years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence Price appeals and asserts the following assignment of error, which we quote verbatim:
I. The Court erred in overruling the Defendant’s motion for J.N.O.V. or in the alternative for a new trial as the jury verdict was against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.
*296 STATEMENT OF FACTS
¶ 3. On June 23, 2000, Mims Conner, his brother LaKendrick Conner, and Kevin Smith were visiting another Mend, Antoin Patterson at his father’s house near B & M Apartments in Macon. Johnny Tyrone Price (Tyrone) and a man named Rico were also present at Patterson’s house that evening. The men were standing around talking as Patterson worked on his car. Tyrone stated that his nephew Derrick Price had broken into some cars and was jailed. This comment was apparently directed at Mims Conner, whose car had been broken into recently. At that point Tyrone left Patterson’s and returned to his apartment at the B & M complex.
¶ 4. The rest of the men stayed at Patterson’s house and about fifteen minutes later Smith asked if Mims would take him and Rico to “Piney Wood.” Mims agreed and LaKendrick, Smith, and Rico got into Mims’ car. As the parties approached the apartment complex in Mims’ vehicle, they met Derick Price leaving the complex. The two vehicles stopped and a discussion ensued between Mims and Derick. Derick maintained that the rumors about his arrest for car burglary were not true. At some point, Mims and Derick alighted from their vehicles and a loud verbal altercation ensued. The testimony is conflicting as to what happened next. Mims and LaKendrick testified that Derick opened the trunk of his vehicle and at about the same time Tyrone walked across the yard with a stick in his hand. They indicated that LaKendrick then got out of the car, questioned Tyrone about what he planned to do with the stick, and the two began to argue. However, Derick and Tyrone denied that Tyrone was in the possession of a stick at that time.
¶ 5. When someone in the complex threatened to call the police Derick left. LaKendrick and Tyrone continued to argue until Mims coaxed LaKendrick back into the car, and afterwards the group left and returned to Patterson’s house.
¶ 6. The police were called to Patterson’s home and Officer Lucious Mason, who responded to the call, advised Mims to just “leave it alone.” After Officer Mason left, Mims, LaKendrick, Smith, and Rico walked over to visit with “Mattie Pearl” and “Miss Christine” who lived in the B & M complex. As the group headed back to Patterson’s house they saw Tyrone and insults were hurled back and forth. A fight then ensued between Tyrone and LaKendrick and Mims and Tyrone’s girl-Mend Lee Ann. At some point during the scuffle Tyrone ran to his apartment to retrieve a knife that he kept outside on the sidewalk to open a jammed storage door. Tyrone ran at LaKendrick and slashed him on the side with the knife. As LaKen-drick started to run away Tyrone cut him again across the neck and back. Patterson grabbed Tyrone and attempted to take the knife away, but Tyrone swiped at him, and then charged at Mims, who was fighting with Lee Ann, and slashed him twice in the back. Patterson grabbed Tyrone in a chokehold, to restrain him, but Tyrone testified that he “shook loose from Antoin and I ran.”
¶ 7. Mims and LaKendrick were taken to the Noxubee General Hospital emergency room, where both were treated for stab wounds. The treating physician, Dr. Naeem Haider, testified that LaKendrick had one serious wound on his left side, about 5-6 inches deep which required surgery to repair the internal organs, and other less serious wounds on his back. Dr. Haider testified that Mims was wounded on the upper right arm and shoulder.
¶ 8. Tyrone Price was convicted by a jury on both counts of aggravated assault and was sentenced to two consecutive terms of six years and twelve years in the *297 custody of the Mississippi Department of Corrections.
ISSUE AND ANALYSIS
I.
The Court erred in overruling the Defendant’s motion for J.N.O.V. or in the alternative for a new trial as the jury verdict was against the overwhelming weight of the evidence.
¶ 9. Price contends that the circuit court erred in overruling his motion for judgment notwithstanding the verdict, or in the alternative a motion for a new trial because the verdict was against the overwhelming weight of the evidence. He contends that the testimony indicated he had a knife, but that LaKendriek Conner and Mims Conner were likewise armed with a stick and a razor.
¶ 10. A denial of JNOV and a motion for a new trial implicate two different standards of review. The denial of a motion for a new trial is reviewed based on the weight of the evidence while the denial of a JNOV is reviewed based on the sufficiency of the evidence. White v. State, 761 So.2d 221, 224 (¶ 10) (Miss.Ct.App.2000).
¶ 11. When reviewing a denial of a motion for a new trial, all evidence in favor of the State is accepted as true, and we will reverse only for abuse of discretion. Id. at (¶ 12). Such a motion should not be granted except to prevent an unconscionable justice. Id.
¶ 12. When reviewing whether a JNOV was erroneously denied we look to the sufficiency of the evidence, and it is viewed and tested in a light most favorable to the State. When reviewing a denial of a JNOV the prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence, and all credible evidence consistent with the defendant’s guilt must be accepted as true. Id. at 224 (¶ 11). This Court may only reverse a denial of JNOV when “with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not ■guilty.” Id.
¶ 13. Although a challenge to the sufficiency of the evidence and to the denial of a new trial implicate different standards of review we address this as one issue, as it was presented in Price’s brief.
¶ 14. Price’s argument is that his conviction can not stand because there was testimony that both Mims and LaKendriek were armed during the altercation and that his actions were in self-defense. Mims, LaKendriek, and Patterson all testified that neither Mims nor LaKendriek were armed during the altercation. Tyrone testified that Mims had a razor, and LaKendriek had a stick. Bystander Sha-quanda Rice testified “Uh, I seen sticks and stuff. I didn’t see a weapon,” when asked if anyone was armed besides Tyrone. Tameka Thomas, another bystander, testified “I seen LaKendriek with a stick, and Mims with a green and black razor.”
¶ 15. The credibility of witness testimony is the province of the jury. Jackson v. Daley, 739 So.2d 1031, 1039 (¶ 29) (Miss.1999). The Mississippi Supreme Court has “repeatedly held that the jury is responsible for judging the credibility of witnesses and the weight that should be attached to their testimony.” Id. As this Court stated in Thomas v. State, 812 So.2d 1010, 1014 (¶ 19) (Miss.Ct.App.2001), “[w]e invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not *298 intend to invade the province and prerogative of the jury.” (citing Evans v. State, 159 Miss. 561, 566, 132 So. 563, 564 (1931)). The jury heard all the testimony and adjudged that of Mims, LaKendrick, and Patterson to be the most credible. Considering the evidence in its totality we do not find the evidence so lacking that a reasonable fair-minded juror could not have found the accused guilty as charged. Moreover, accepting as true all evidence favorable to the State, we do not find the trial court abused its discretion in denying Price’s motion for a new trial. The conviction and sentence of Johnny Tyrone Price is affirmed.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF NOXUBEE COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE OF SIX YEARS; COUNT II AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS TO RUN CONSECUTIVELY TO COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, RESTITUTION OF $5,570 AND 5 YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.